Case number 14-1022 James L. Roberts Petitioner v. National Transportation Safety Board, et al. Ms. Widener for the petitioner, Ms. McNeil for the respondent. Good morning, Ms. Widener. Good morning. My name is Deanna Widener. David Anderson and I both represent James Roberts. I would like to reserve three minutes for rebuttal. This case is an Equal Access to Justice Act case. Mr. Anderson and I have represented Mr. Roberts for nearly four years now, and the bottom line is we have not been paid. It is undisputed that the government, the administrator of the FAA, brought this action without substantial justification. It's undisputed that James Roberts was the prevailing party. The only issue before this Court is a very narrow issue, and that question is whether Mr. Roberts incurred our fees and expenses. I have three reasons why we should be paid in this case. Let me ask a question at the outset. What do you believe the definition of incurred is? I believe the definition of incurred is either legally obligated to pay or having a relationship with an attorney. And so the case law is clear that you do not have to have a legal obligation to pay the attorney. For instance, there are pro bono cases where an individual does not have a legal obligation to pay. In those pro bono cases where fees were awarded, has it not been the case that the original pro bono agreement was, if there are fees awarded, then the law firm gets the money? No, Your Honor, I'm not sure that's exactly been proven in all of those cases. I don't think that was an issue, because what the courts focus on is the purpose of EJA. And the purpose of EJA is to encourage relatively poor individuals like Mr. James Roberts to defend himself against government oppression and injustice, which is exactly what happened in this case. But Mr. Anderson and I came in... But this constitutes a waiver of sovereign immunity, the fee provision, right? Yes, Your Honor. And fees, excuse me, waivers of sovereign immunity are to be strictly construed, right? There's case law that says that, but also there's case law that says that this provision should be construed in order to provide substantial justice and to serve the purpose of EJA. Does the word incurred mean in a relationship? Is there anywhere else that it has that meaning? That seems a bit of a stretch from the ordinary dictionary meaning, at least, doesn't it? No, Your Honor, it's not. For instance, our relationship with James Roberts is governed by Alabama law. And Alabama law provides that if, in fact, we have a relationship with James Roberts, if we provide a benefit to him that he willingly accepts, he has incurred those expenses and he owes us under Alabama law. Is that basically quantum merit? Yes, Your Honor, it's exactly quantum merit. Are there any cases dealing with the attorney-client relationship under that line of Alabama law? Yes, Your Honor, and I've cited to them in my brief. The attorney-client or the accountant-client? No, Your Honor, they're attorney-client. There are attorney-client cases where, in fact, attorneys are, I'm not sure if the case I cited is attorney-client, but any services provided in the state of Alabama where an individual accepts that benefit knowingly, which is exactly what occurred here, that individual is legally obligated to pay. We are not required in Alabama to have engagement letters at the outset of a case, although our insurance companies are now encouraging that, but we are not required to do so in order to enforce a claim. As a matter of fact, under Alabama law, I could bring a suit against Mr. Roberts tomorrow, and he would be legally obligated to pay me for those fees. Can you, in fact, tell us a case in which Alabama law has applied that theory to an attorney-client relationship? I'm not sure if this case that I cited applies to an accountant or if it applies to an attorney, but I don't see what the difference would be. If the court would like me to, I could definitely brief that for the court. In fact, I think I've been in situations where I have not had an engagement letter, I have not had a contract, and yet I was entitled to my fees. And so it is under the law, once you accept this benefit, which Mr. Roberts did. We tried this case for four days. This case has been going on. We had to try it in two different cities. We represented Mr. Roberts for the exact purpose that EJA was enacted. We represented Mr. Roberts because this was an injustice. His livelihood was being taken away. They took away his mechanic certificates. This is the only way he was able to provide for his family. And Mr. Anderson and I saw this injustice occurring, and we did what I think all lawyers are supposed to do, and we came in and tried to help out in this situation. All of that is very true, but we're reviewing only one question, and really is that determination on the question of whether the fee was incurred by Roberts a factual determination by the administrative judges or a legal determination? It's a legal determination, Your Honor, and that's reviewed de novo in this court. This is an EJA statute. It is a statute of general application, and so therefore this is clear. We owe no deference. This is clear that this is not a Chevron case. This is a de novo review. And so the interpretation of the word incurred is, in fact, for this court to determine, not the NTSB or the ALJ. So is it your position that the way that I read the board's decision is that they looked at the Black's Law dictionary definition of incurred and said that that means legal obligation, and they stopped there and said that that's really the only thing that matters, and they recognized that there might be an exception in some circumstances, but they didn't seem to consider at all kind of the purposes of EJA. So is that what you're saying the legal error was? Yes, Your Honor, that and a couple of other additional legal errors. Number one, they did not define incurred correctly. They left it with just the legal obligation, and there are exceptions to that where once there is a relationship, it is incurred. And secondly, he did incur it with us, and he did agree with me to pay over any EJA award. So even if he wasn't legally obligated, we fall under one of those exceptions that the NTSB and the ALJ and the Department of Justice recognize, that if, in fact, we would have done this pro bono from the outset, if we would have agreed to do that, we would have waived any right. For instance, let's say Mr. Roberts wins the lottery tomorrow. Am I forced as a lawyer to say you do not have to pay me for the amounts that I am owed because I'm recognizing that you can't afford me right now? Is it correct to characterize this dispute as, in the following way, that there is no controversy that you were not doing this pro bono? Is there any evidence that you were doing the case pro bono? Yes, Your Honor, we haven't been paid, if that's the definition of pro bono. I did a lot of pro bono work. What I mean is you took the case simply because of the principal involved and you were never going to bill for it. There's no evidence of that. Yes, Your Honor, I have an affidavit that I believe addresses this. And so we never got an engagement letter. Now, here's my point. If you set aside the idea that you were doing this pro bono, and I don't see any evidence that you were, then somebody owes you the legal fees. And the only two possibilities are Mr. Roberts individually or the company. And there's no evidence that the company owes us the legal fees, and they haven't paid us the legal fees. We have the benefit of hindsight right now where it's been nearly five years where the company has not paid us. The company put in an affidavit which said I have no express agreement to indemnify them. They have not indemnified them. So even under Alabama law, let's say the company did agree, which we do not admit, and they did not agree, but even if they did, James Roberts would be jointly and severally liable for this if the company did not honor if they breached any indemnity agreement with James Roberts. And so in this situation... I'm thinking that your argument that under Alabama law, if you provide services through an attorney-client relationship, then quantum of merit entitles you to recover regardless of the fact that there is no... You can make the same argument with respect to the company, can't you? No, Your Honor, the company is not a party here. And no, I don't have a contract with them. There's potentially statute of frauds problems with the company in this situation. And so this would be a much more complex analysis. And so instead, I provided benefits to James Roberts. But you did send bills to the company, did you not, that included this service? Or am I getting that backward? No, Your Honor. Well, actually, nobody was paying us, and there were some inadvertent errors of some items for James Roberts that got put on Darby Aviation's bills, and there were a couple of Darby Aviation things because it was a block billing that there were conversations that included some things that were Roberts and some things that were also Darby Aviation. It was inadvertent. We're not asking for any of those fees in this situation. We're asking for the fees for defending James Roberts. I see that my time is up. Back to the other point, if you would send us at least a 34-day letter, what is it, a letter telling us if you have an attorney-client case under the quantum mirror with law in Alabama. But the two cases you cited, I believe, are not professional services of this sort at all. Well, they're real free cases, aren't they? Real estate broker cases. They very well may be, but I'm not sure that it makes a difference. Well, I'm not sure it does either, but I'd like to find out. Yes, sir. If you have cases involving attorney-client relationships. I'd be happy to. Let us know that. Yes, Your Honor. Thank you. All right, Ms. McNeil. Good morning. Sonya McNeil for the government. The applicant in this case, like the applicant in the case of In re Espy, where, Judge Sentel, you were on the panel, has not demonstrated that it is he and not someone else who incurred the fees in connection with the underlying merits proceeding. Now, this is not an onerous. In the Espy case, there was a written retainer agreement obligating the father to pay. Your Honor, respectfully, I think if you look back at the Espy case, you'll find that the written retainer agreement, or at least the portion of it that the court quoted, didn't provide anything as far as who was responsible for payment for the services. Now, of course, the court noted that the invoices in that case had been sent to the father, but the court said specifically that there was no evidence that the son had either paid or become liable for paying the attorneys that his father retained on his behalf. Did the company retain counsel for Mr. Roberts in this case? Your Honor, that's entirely unclear, and that's exactly the point. The evidentiary burden to show that an applicant is eligible for fees is not onerous, and it serves an important purpose. It's reasonable for the government to ask before spending public money for an applicant to show what it was at the time of the underlying merits proceeding that he understood, that counsel understood as far as who was doing what for whom and who was going to pay for it. And before doing this ---- So somebody is obligated to pay these legal fees because the case was not done pro bono. Let's suppose it's the company that's obligated to pay the legal fees. Does that make the end on an indemnification basis? That doesn't change anything, does it? Your Honor, if I understand your question, if the company is obligated to pay the fees, Mr. Roberts is still ineligible for an ETA award, both because the company, of course, is not a party to this proceeding and it's only a party who may claim an ETA award, and because then Mr. Roberts himself would have no liability to pay the attorneys. And that's, again, this is what the Enright SB case stands for. If a Wellmark, meaning third-party benefactor, picks up the tab for attorneys' fees, that is a laudable thing, but it is not an instance where Congress has provided for an ETA award. But SB isn't an Equal Access to Justice Act case. One that is is ARP v. EEOC. And there we held that a pro bono counsel could be paid. There's no legal obligation at all. And, in fact, the court says two or three times in the opinion that they recognize that there's no legal obligation to pay here. But yet that's the definition that the Board adopted. Isn't that squarely at odds with our precedent and, therefore, legal error? No, Your Honor, and I think there's two ways to understand the pro bono cases, either of which direct that the petition for review here be denied. Number one, it's very clear in all of the pro bono cases that the overriding intent of Congress in enacting EJA was to encourage pro bono representation. And so, as a categorical matter, because of the legislative intent of Congress, when a party is represented pro bono, clearly that is a situation where an ETA award should be available. As far as the legal obligation, I agree with you that at the end of the day, when counsel is representing a party pro bono, that no one in the end writes a check. But it's perfectly clear who would be responsible for paying counsel if, at the end of the day, there was a bill. That is unlike this situation where, as the Board observed, the record was missing any direct statement by or agreement signed by Mr. Roberts himself as to what the party's understanding was. And enforcing this sort of agreement prevents gamesmanship. But back to, I think, the question by Judge Randolph. If a lawyer takes on a client, there's either one of two things going on. He or she is representing the client pro bono, or he or she is expecting to be paid. Okay, if there's no evidence that this was a pro bono representation, then it has to be the second circumstance. And if there's no evidence that the company is paying this, or has agreed to pay it, then what more do we need? Your Honor, respectfully, EJ is quite clear. It is the applicant's burden to show that he has incurred fees and expenses, he and not someone else. The record in this proceeding did not support that conclusion. An affidavit by the lawyer and an affidavit by the CFO of his employer isn't enough to support that conclusion? No, Your Honor, because those affidavits say nothing about what the understanding of the parties was at the time of the underlying merits proceeding. And it is, of course, the fees that are incurred past tense in connection with that proceeding that trigger the possibility of any EJ award. Enforcing a rule that requires... What were the affidavits supposed to say that they didn't? Your Honor, I hesitate to speculate, but I think a good start would have been... Well, you're saying that they weren't sufficient. Tell me why they weren't sufficient. For two reasons, Your Honor. One, for the reason that I just explained, because they were silent as to what the understanding of the parties was during the underlying merits proceeding. And in light of all of the other evidence in the record, evidence that on invoices Darby was listed as the client, that invoices were mailed to Darby, actually addressed to Darby, billed Darby for work done for Mr. Roberts, billed Mr. Roberts or purported to for work done for Darby, paid by Darby. Your Honor... How many bills were sent to the company as opposed to Mr. Roberts himself? Your Honor, that changed over time in this case. Mr. Roberts initially filed an EJ application that was premature. Three invoices that were included as attachments to that application were addressed to Darby. By the time Mr. Roberts filed a timely EJ application, only one invoice was not only mailed to Darby's business address but addressed to Elton Darby, the CFO of the company. In his reply in support of his EJ application, then all of the invoices had shown that they were all addressed or they were altered to be all addressed to Mr. Roberts as the administrative law judge. What does he do with the line of EJ cases that holds that even if an insurer is legally obligated to pay the attorney's fees of the individual who's bringing the lawsuit, that nevertheless that individual is entitled to legal fees? Your Honor, in those cases, just as with the union representation cases, the individual can be understood as having borne the burden of legal fees in advance through his insurance premiums or union dues. That was the court's holding in Edward N. Wilson. And that simply, again, is unlike this case. Here, like in Ray Espy, we have an applicant who has not demonstrated that it is he and not someone else. What about the line of cases where they've allowed EJ awards where there have been a contingent fee arrangement? Are you saying that those cases are wrongly decided? Not at all, Your Honor. The extent of an applicant's burden can, of course, be contingent, but the point is at the end of the day, in those cases, there is an understanding that if an EJ fee is obtained, it will be turned over to counsel. That understanding is absent from this case. What about the quantum Merowith theory from our Alabama law? What do you say to that? Your Honor, even if it was appropriate for the board to try to divine how an Alabama court would come out on this question. It has to be, doesn't it? No, Your Honor. Your question is whether he's obligated to pay counsel. Now, that's going to be determined by state law, isn't it? Your Honor, that doesn't distinguish this case from in Ray Espy, where, of course, the son accepted the benefits. Tell me what it is that you would say about the theory that he's obligated to pay the attorney under Alabama law about quantum Merowith. Your Honor, if Mr. Roberts had come to the board with a judgment from an Alabama state court, then it would at least be clear who was owed. Okay, sure it would. Forget it. He didn't get such a judgment. What do you say to the proposition that he's obligated to pay under Alabama law? There's nothing that says you have to have a judgment for the attorney fees before EJ applies. Forget about that judgment theory. Tell me what you say to the proposition that he is obligated to pay under Alabama law. Your Honor, I say that the possibility, which is all we have here, that he is obligated to pay under Alabama state law is not sufficient as a matter of federal law for him to have incurred fees. That's the best you've got? Your Honor... What federal law speaks to this question? Your Honor, EJ itself speaks to this question. How so? By requiring that an applicant show that he incurred fees within the... We're there. We're at that point. We're trying to determine if he has showed it. My question to you is, has he showed it if he shows that under Alabama law he's obligated by theory of quantum merriment? Your Honor, if he had showed it before the board, I suppose at least hypothetically the case could have come out differently, but there was not, I repeat, before the board, adequate evidence for the board to conclude that under the circumstances there was a mutual intent to agree between he and his attorney, not his attorney and his employer, or he and his employer or any other combination we might be able to come up with. That simply is not enough. And requiring that parties show at the time of the underlying merits proceeding what their understanding was as far as fee arrangements is important because it discourages gamesmanship from parties who might perhaps be tempted opportunistically to structure or restructure their arrangements based on the outcome of the merits proceeding. If they have not reached an explicit agreement, fee agreement, at the time counsel begins working, then you're saying they're never going to be eligible for EJ recovery? No, Your Honor, that's not at all what we're saying, and that's not what the board says. What was required here was a clear showing, not ambiguous and inconsistent invoices, not a record that couldn't answer the question of who did what for whom and who owed for it why, but evidence to show whether through a written agreement, and I would add the board has said since 2001 that a written agreement is important, so it's no surprise here. It could be important, but it certainly isn't necessary, is it? It certainly isn't, Your Honor, but in light of the record in this case, and in the absence of any such agreement to counter the natural impression that the evidence in the record left, the board simply could not conclude that Mr. Roberts had incurred fees and expenses during the underlying merits proceeding. The Supreme Court has a number of decisions indicating that for purposes of federal law that turn on property rights, that the property rights are to be determined under state law. The only one that comes to my mind now is Ruckles' House v. Monsanto. So isn't that a perfectly legitimate argument that has not been addressed, that he was obligated, regardless of the lack of a written retainer agreement, he was obligated under Alabama law to compensate the attorneys who represented him? Well, I mean, Your Honor, query how, if his attorneys now go to an Alabama state court, that he would be able to deny, after stating in his brief that he owed them under Alabama law, that, in fact, he was liable to them. But the point is that here we have overall— The legal obligation doesn't turn on whether he goes to an Alabama court. He may be legally obligated to pay, but the attorneys may simply refrain from bringing a suit because, for all they know, he may be judgment-proof. And so you keep coming back to if he went to Alabama, or if they went to the Alabama court, that there's no requirement that that be done. And I come back to the point that property rights that are important for federal law are determined by state law, and there's a string of Supreme Court cases still holding. So why is this any different? Your Honor, I take that point and I appreciate it. Let me be clear. I'm not saying here that any party needs to go to state court before coming to an administrative body or to a district court or needs to enter an evidence or written agreement. My point is only that the statute requires that an applicant show his eligibility. And in light of all of the evidence that was before the Board in this case, even if they had attempted to hypothesize what an Alabama state court would have concluded, they could not find, based on substantial evidence, that Mr. Roberts had incurred the firm's fees and expenses. In the proceedings before the Board, was Alabama law even mentioned or argued? Yes, Your Honor. The firm raised Alabama law in its brief before the Board. Okay. Good. The Court has no further questions. We ask that the petition for review be denied. Thank you. All right. Your time was up, Ms. Widener, but we'll give you two minutes. Thank you. Very briefly, Your Honors, the difference between this case and all of the cases, SB and several of the other cases cited by the Department of Justice, is in each of those cases the lawyers were paid. In this case, we have not been paid. And so this is a major distinction between all of those cases. Why is that an important distinction? The important distinction— The issue does not turn on whether the lawyer has been paid or not. Because they pay the lawyers when they have not been paid. And so it actually works in our favor. And so I would like to point out a quote from a case called—it's in my brief. It's Hornell v. Schweiker. It says, If an attorney charged a client $40 per hour, the agent would permit payment of a fee calculated at $75 per hour. This is back then. Even though the client never legally incurred liability for the additional $35 per hour, the court can discern no reason why this logic is not compelling. That's a district court case that's not binding, right? That's correct, Your Honor. But it is very persuasive. And what the court is pointing out is it's not whether it was legally incurred. What is important is the value of the services that were rendered. And in this case, Anderson Widener spent four days in two different states and has written numerous briefs. We've been up on reconsideration, up on appeal, back down. And in this case, we provided valuable services to a man in order to preserve his livelihood when it is undisputed that the government had no substantial justification for taking away an airline mechanic's licenses in this case. And so we would ask the court to please consider the purposes of EJA in order to incentivize individuals like Anderson Widener to come forward and help people in this situation who cannot afford to pay a lawyer. Thank you. All right. With respect to the issue of the Alabama law, can you give us a letter by Close of Business Monday? Yes, Your Honor. All right. All right. Thank you. We'll take the case under submission.